IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF NATURAL RESOURCES, | ) ) ) ) | No. 31853-2-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| PUBLIC UTILITY DISTRICT NO. 1 OF KLICKITAT COUNTY, a Washington municipal corporation, | ) ) ) ) | PUBLISHED OPINION |
| Petitioner. | ) ) | |

SIDDOWAY, C.J. — We granted discretionary review of an order certified by the

Superior Court for Klickitat County as warranting immediate review. At issue is whether

the Department of Natural Resources has statutory authority to pursue a fire suppression

cost recovery claim against a public utility district (PUD) under RCW 76.04.495.

Specifically in dispute is whether a municipal corporation, such as a PUD, is a "person"

(or alternatively a "corporation") within the meaning of the fire cost recovery statute.

The superior court denied the Public Utility District No. 1 of Klickitat County's motion to dismiss the department's cost recovery claim but certified pursuant to RAP 2.3(b)(4) that "[a]n immediate appeal . . . may materially advance the ultimate termination of this litigation." Clerk's Papers (CP) at 78.

We hold that a municipal corporation is a "person" and a "corporation" within the plain meaning of chapter 76.04 RCW and is subject to a civil action to recover fire suppression costs. On that basis we affirm and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

In August 2010, a forest fire near Lyle, Washington burned more than 2,100 acres after a tree fell onto a power line owned and operated by the Public Utility District No. 1 of Klickitat County. The Department of Natural Resources incurred over $1.6 million in costs suppressing the fire. Based on its investigation, the department concluded that the fire was caused by the PUD's negligence in failing to remove the tree, which posed a foreseeable hazard to its electrical lines.

The department commenced this action against the PUD to recover the fire suppression costs under RCW 76.04.495, a provision of the Forest Protection Act, chapter 76.04 RCW (hereafter sometimes "the Act"), which gives the State the right to recover the costs of suppressing fires negligently started by "any person, firm, or corporation." The PUD moved to dismiss the department's complaint for failure to state a claim upon which relief may be granted, arguing that (1) municipal corporations are not

2

among the entities identified in RCW 76.04.495 from whom the department can recover

fire suppression costs and (2) "the money judgment [the department] seeks as against

another taxpayer funded entity of this [s]tate is contrary to Washington law and public

policy." CP at 25. The trial court denied the motion to dismiss but certified this

controlling question of law as one as to which there is substantial ground for difference of

opinion:

> Whether Plaintiff State of Washington Department of Natural Resources
> has the statutory authority to proceed with a fire suppression cost recovery
> claim against Defendant Public Utility District No.1 of Klickitat County
> under RCW 76.04.495.

CP at 78. We granted discretionary review.

## ANALYSIS

The Forest Protection Act was enacted in 1923 and seeks to protect public and

private forest lands in the state from the devastation caused by forest fires. It empowers

the department to take charge of and direct the work of suppressing forest fires. RCW

76.04.015(3)(b). At issue in this case is the scope of the provision of the Act authorizing

the department to recover fire suppression costs from any person, firm, or corporation

that is negligently responsible for the start or spread of a fire.

Whether the trial court properly denied the PUD's motion to dismiss is a question

of law that we review de novo. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141,

164, 157 P.3d 831 (2007). The meaning of a statute, on which the court's decision

3

turned, is likewise a legal question reviewed de novo. *State v. Roggenkamp*, 153 Wn.2d 614, 621, 106 P.3d 196 (2005).

A court's fundamental objective in interpreting a statute is to ascertain and carry out the legislature's intent. *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). If the statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). The plain meaning of a statute is not gleaned solely from the words of the provision being scrutinized, but is determined from "all that the Legislature has said in the . . . related statutes which disclose legislative intent about the provision in question." *State v. Costich*, 152 Wn.2d 463, 471, 98 P.3d 795 (2004) (quoting *Campbell & Gwinn*, 146 Wn.2d at 11). To determine a statute's plain meaning, courts look to "the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009).

The PUD's briefing on appeal relies on several canons of construction that it contends support ascribing a narrow meaning to "person" as used in RCW 76.04.495. But it is only if a statute remains ambiguous after a plain meaning analysis that we resort to external sources or interpretive aids, such as canons of construction and case law.

*Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 600, 278 P.3d 157 (2012). We are able to

resolve the appeal based on the plain meaning of the statute.

## History of relevant legislation

The legislature authorized municipalities to acquire and operate public utilities,

including electrical utilities, in 1909. LAWS OF 1909, ch. 150 ("An Act authorizing cities

and towns to construct, condemn and purchase, purchase, acquire, add to, maintain,

conduct and operate certain public utilities.").[1]

The Forest Protection Act, including the original version of the fire cost recovery

provision, was enacted over a decade later in 1923. It provided that:

> Any *person, firm or corporation* negligently responsible for the starting or
> existence of a fire which spreads on forest land shall be liable for any
> expense incurred by the state, a municipality or forest protective
> association, in fighting such fire provided that such expense was . . .
> authorized by the state.

LAWS OF 1923, ch. 184, § 11 (emphasis added).

---

[1] Section 1 of the 1909 law delegated to "any incorporated city or town within the
state" the power to

> construct, condemn and purchase, purchase, acquire, add to, maintain and
> operate works, plants and facilities for the purpose of furnishing such city
> or town and the inhabitants thereof, and any other persons, with gas,
> electricity and other means of power and facilities for lighting, heating, fuel
> and power purposes, public and private, with full authority to regulate and
> control the use, distribution and price thereof.

LAWS OF 1909, ch. 150, § 1 at 580.

A statutory definition of "person" for purposes of construing Washington statutes predated statehood. *See* LAWS OF WASH. TERR. § 134 at 99 (1854). By the time the Forest Protection Act was enacted in 1923, the definition of "person" existed in a form adopted in 1891, when it was included in "An Act concerning the construction of statutes," which provided in relevant part:

> *Be it enacted by the Legislature of the State of Washington:*
> SECTION 1. The following provisions relative to the construction of statutes shall be rules of construction and shall constitute a part of the code of procedure of this state: The provisions of this code shall be liberally construed, and shall not be limited by any rule of strict construction. The provisions of a statute, so far as they are substantially the same as those of a statute existing at the time of their enactment, must be construed as continuations thereof. *The term 'person' may be construed to include the United States, this state, or any state or territory, or any public or private corporation, as well as an individual.*

LAWS OF 1891, ch. 23, § 1 (emphasis added). The definition of "person" has remained unchanged since. It is presently codified at RCW 1.16.080(1).

In 1931, the legislature authorized the establishment of public utility districts. LAWS OF 1931, ch. 1, § 2. The PUD makes a passing suggestion in its argument on appeal that in light of this timing, the legislature adopting the Fire Protection Act could not have contemplated PUDs. But the legislature had been aware of electrical utilities operated by municipal corporations, so the 1931 PUD legislation is not consequential. The 1931 legislation recognized the longstanding existence of public utilities operated by municipalities. *See* LAWS OF 1931, ch. 1, § 12 (providing that "[n]o public utility district

created hereunder shall include therein any municipal corporation . . . where such

municipal corporation already owns or operates all the utilities herein authorized.")

The present version of the fire suppression cost recovery statute, which was in

effect at the time of the department's suppression of the Lyle fire leading to the lawsuit

below, was last amended in 1993. Reformatted for clarity, it provides in relevant part:

> (1) Any person, firm, or corporation:
>
> (a) Whose negligence is responsible for the starting or existence of a fire which spreads on forest land . . .
>
> [s]hall be liable for any reasonable expenses made necessary by . . . this subsection. The state . . . may recover such reasonable expenses in fighting the fire, together with costs of investigation and litigation including reasonable attorneys' fees and taxable court costs, if the expense was authorized or subsequently approved by the department. . . .
>
> (2) The department or agency incurring such expense shall have a lien for the same against any property of the person, firm, or corporation liable under subsection (1) of this section by filing a claim of lien naming the person, firm, or corporation, describing the property against which the lien is claimed, specifying the amount expended on the lands on which the firefighting took place and the period during which the expenses were incurred, and signing the claim with post office address. No claim of lien is valid unless filed, with the county auditor of the county in which the property sought to be charged is located, within a period of ninety days after the expenses of the claimant are incurred. The lien may be foreclosed in the same manner as a mechanic's lien is foreclosed under the statutes of the state of Washington.

RCW 76.04.495. "Department" as used in the Act "means the department of natural

resources, or its authorized representatives, as defined in chapter 43.30 RCW." RCW

7

76.04.005(3). Chapter 76.04 RCW does not include definitions of "person," "firm," or "corporation" as used in the chapter.[2]

### I.    Plain meaning analysis

### A.    RCW 1.16.080(1) is properly considered

Since chapter 76.04 RCW does not include a definition of "person," the department looks to RCW 1.16.080(1), the current codification of Laws OF 1891, ch. 23, § 1. As previously observed, the introductory phrase of that legislation provides, "The following provisions relative to the construction of statutes shall be rules of construction and shall constitute a part of the code of procedure of this state." RCW 1.16.080(1) states:

> The term 'person' may be construed to include the United States, this state, or any state or territory, or any public or private corporation or limited liability company, as well as an individual.

In *In re Brazier Forest Prods., Inc.*, 106 Wn.2d 588, 595, 724 P.2d 970 (1986), our Supreme Court relied on the general definition of "person" in RCW 1.16.080(1) as "strong support" for ascribing that meaning to the "persons" who could claim liens under RCW 60.24.020, because "person" was not otherwise defined in Title 60 RCW. In *State*

---

[2] "Person" and other terms are defined in RCW 76.04.760, enacted in 2014, which creates an exclusive civil cause of action by which an owner of forested lands may sue "a person" for property damage resulting from a fire negligently started or negligently allowed to spread. But the definitions appearing in RCW 76.04.760 "only apply throughout this section . . . unless the context clearly requires otherwise." RCW 76.04.760(5).

*v. Jeffries*, 42 Wn. App. 142, 145-46, 709 P.2d 819 (1985), this court concluded that under settled rules of statutory construction, a court should consider the definition provided by RCW 1.16.080(1), which "defines 'person' for purposes of the entire code," as a legislative enactment relating to the same subject matter area as statutes using the undefined term "person"—as long as the statutes are not in actual conflict. Where the legislature does not provide for another definition of "person," RCW 1.16.080(1) is, by its plain terms, germane to statutory construction.

Yet because RCW 1.16.080 states that "person" *may* be construed to include the listed entities as well as an individual, our Supreme Court has recognized that it "only allows, but does not require such a construction." *Brazier Forest Prods.*, 106 Wn.2d at 595. As the Supreme Court further explained in *Segaline v. Dep't of Labor & Indus.*, 169 Wn.2d 467, 474, 238 P.3d 1107 (2010), the "nature and purpose" of specific provisions of the RCW may require a different interpretation of "person" than the permissive interpretation provided by RCW 1.16.080(1). Such was the result in *Segaline*, because the purpose of the statute being applied in that case—to protect the exercise of individuals' constitutional free speech rights—had no application to the state agency that was asking the court to treat it as a "person" having rights under the statute. The Court concluded that it made "little sense" to interpret "person" to include government agencies, who "do not have free speech rights." *Id.* at 474.

B. *"Any . . . corporation"*

The PUD points to the fact that the specific provision at issue does not use the stand-alone term "person," but refers instead to "any person, firm or corporation." From that, it argues that "person" cannot be plainly read to have the meaning provided by RCW 1.16.080 without rendering "firm" and "corporation" superfluous. While the PUD's point is well-taken as to RCW 76.04.495, it ignores the fact that many other provisions of the Act *do* use the stand-alone term "person." Among them are provisions that require "every person" who receives notice of fire prevention and fire suppression preparedness violations to cease operations, RCW 76.04.415; that provide that "[n]o person operating a railroad" may permit its employees to deposit fire or live coals on the right-of-way proximate to forest material, RCW 76.04.435; and that provide that it is unlawful for "any person" to negligently allow fire originating on its own property to spread to the property of another, RCW 76.04.730.[3] The definition of "forest landowner" includes "any person" in possession of any public or private forest land. RCW 76.04.005(10).

The decision in *Segaline* pointed out that the meaning of "person" varies within the RCW. *Segaline*, 169 Wn.2d at 473. The PUD's argument highlights the fact that the

---

[3] Other provisions require "[a]ny person" engaged in activity on forest lands to immediately report fires on such lands, RCW 76.04.445(1); require "a person" to have a valid burning permit to burn certain flammable materials on forest lands, RCW 76.04.205; and provide that "no person" may dump hazardous quantities of mill wastes or forest debris on forest lands without a permit, RCW 76.04.235.

meaning of "person" may vary even within a chapter of the RCW. But the frequent stand-alone use of "person" in the Act makes the definition provided by RCW 1.16.080(1) a permissible, if not presumptive definition in many provisions. And as the department points out, the PUD surely falls within the category of "any . . . corporation" in those provisions, like the fire suppression cost recovery statute, that speak of "any person, firm, or corporation."

This is especially clear because other provisions of the Act, where appropriate, speak of private or public corporations, demonstrating that the legislature had both private and public corporations in mind. *See* RCW 76.04.105, .115 (dealing with DNR's authority to contract with "private corporations" for the protection and development of forest lands); RCW 76.04.475 (authorizing any corporation, "public or private" to obtain reimbursement for fire suppression costs subject to certain conditions). The word "any" is unambiguous. In *Evans v. Brotherhood of Friends*, 41 Wn.2d 133, 145, 247 P.2d 787 (1952), our Supreme Court, in determining the meaning of "any lottery," stated that "the word 'any,' given its usual meaning, is all embracing as far as different types and kinds of lottery schemes and devices are concerned." *See also Cerrillo v. Esparza*, 158 Wn.2d 194, 203, 142 P.3d 155 ("[C]ourts have consistently interpreted the word 'any' to mean 'every' and 'all,'" (quoting *Stahl v. Delicor of Puget Sound, Inc.*, 148 Wn.2d 876, 884-85, 64 P.3d 10 (2003))).

11

Having established strong support for a permissively broad reading of "person" in chapter 76.04 RCW and that references to "any person, firm, or corporation" plainly include municipal corporations, we turn to whether there is anything in the "nature and purpose" of the Act that requires the exclusion of municipal corporations from the meaning of those terms.

> C.    *Consideration of provisions of the Act and its purpose*

The primary purpose of the Act is to protect, through prevention and suppression, private and public forest lands from damage caused by uncontrolled fires. *See* chapter 76.04 RCW; *e.g.*, RCW 76.04.015-.035, .075-.167. To that end, it commands or authorizes the department (among other duties and prerogatives) to enforce requirements that persons obtain burn permits before burning flammable or waste material on forest lands, RCW 76.04.205; to enforce a requirement that persons obtain a permit before dumping mill waste or forest debris in hazardous quantities, RCW 76.04.235; to require that owners of forest land provide adequate protection against the spread of fire during high danger periods, RCW 76.04.600; to enforce the duty of owners of land and persons responsible abate, isolate, or reduce fire hazards that they create, RCW 76.04.660; and to require that persons, firms or corporations reimburse the State for fire suppression costs arising from their negligence, RCW 76.04.495.

The Act's application to utilities, private or public, is explicit in its provision dealing with the department's duty to investigate the origin and cause of all forest fires

"to determine whether either a criminal act or negligence . . . caused the starting, spreading, or existence of the fire." RCW 76.04.015. The provision contemplates that the operation of utilities will come within the scope of such investigations and makes no distinction between private and public utilities. It provides that "in conducting investigations, the department shall work cooperatively, to the extent possible, with utilities, property owners, and other interested parties to identify and preserve evidence." RCW 76.04.015(2)(c)(i). While it generally authorizes the department to take possession or control of relevant evidence that it finds in plain view, *see id.*, it makes special provision for property used in the operation of a business or utility. With respect to a utility, it provides that absent a court order, the department may not take possession or control of a utility's property over objection if taking possession and control would "materially interfere with the . . . provision of electric utility service." RCW 76.04.015(2)(c)(ii). It provides that "[o]nly personnel qualified to work on electrical equipment may take possession or control of evidence owned or controlled by an electric utility." RCW 76.04.015(2)(c)(iv).

We may take judicial notice of the fact that downed power lines and other operational mishaps experienced by electric utilities can trigger wildfires, whether or not negligence is involved. A legislative fact of this sort is properly considered "as part of the statute's context because presumably the legislature also was familiar with them when it passed the statute." *Campbell & Gwinn*, 146 Wn.2d at 11 (quoting 2A NORMAN J.

13

SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)). The Act's contemplation that the operation of electric utilities will fall within the scope of department investigations reflects this legislative fact.

Public corporations, like private corporations, have the capacity to negligently start forest fires. The manifest purpose of the Act can be achieved only if the department's authority extends to the activities of public corporations, including to regulate threats they pose and to recover the cost of suppressing fires for which they may be responsible. The PUD offers no explanation *why* the legislature would exclude public corporations from the operation of the Act. Given the manifest purpose of the Act, there is no textual basis for concluding that its references to "person" and "any . . . corporation" do not include public corporations such as PUDs. In this respect, the Act is unambiguous.

The PUD nonetheless argues that the inclusion of a lien as an enforcement mechanism in RCW 76.04.495(2) compels the conclusion that the Act cannot apply to public corporations. We turn to that argument.

### D.    *Enforcement by lien*

The PUD offers two syllogisms as its principal argument against the application of RCW 76.04.495 to public corporations:

First,

- "The statute provides for a cause of action by DNR for recovery of fire suppression costs against a negligent 'person, firm or corporation,'"
- "The statute provides that the enforcement mechanism is DNR 'shall have a lien' on the property of the "person, firm, or corporation,'"
- "Therefore, a 'person, firm, or corporation' must be an entity which is legally capable of having a lien placed on its property."

Second,

- "The property of municipal corporations, such as [the PUD], is public property,"
- "It is well-settled Washington law that no lien may be placed upon public property,"
- "Therefore, a 'person, firm, or corporation' cannot include a municipal corporation, such as [the] PUD."

*See* Appellant's Reply Br. at 1-2.

The second premise of the PUD's first syllogism is false. RCW 76.04.495 does not provide that "the" enforcement mechanism for fire suppression cost recovery is a lien, and it does not provide that the department "shall" have a lien automatically, as implied, but only conditionally.[4]

---

[4] The second premise of the second syllogism is couched in overly-strong terms, but need not be addressed further because we agree that the lien provided by RCW 76.04.495(2) could not be obtained against the PUD. Washington cases have clearly and consistently followed the general rule that mechanics' and materialmen's liens cannot be placed on public property. The basis for the rule is common law, not constitutional, however. It is within the legislature's power to authorize a lien against public property. But we would not infer a legislative intent to do so absent clear and unmistakable language.

15

The operative statutory language creating the department's right to recover fire costs from a negligent party appears in subsection (1) of RCW 76.04.495:

Any person, firm, or corporation: . . . [w]hose negligence is responsible for the starting or existence of a fire which spreads on forest land . . . shall be liable for any reasonable expenses made necessary by [a type of fault identified by] this subsection. The state . . . may recover such reasonable expenses in fighting the fire, together with costs of investigation and litigation including reasonable attorneys' fees and taxable court costs, if the expense was authorized or subsequently approved by the department.

Because the superior court has jurisdiction in all cases at law in which the demand amounts to $300, the department properly filed a complaint seeking damages under RCW 76.04.495 in the Klickitat County Superior Court. RCW 2.08.010. It was not required to seek a lien.

Subsection (2) of the statute, dealing with the right to pursue a lien, is conditional, not absolute. It provides that the department *shall* have a lien *by* following a prescribed procedure. As the department points out, the short timeline for applying for a lien (90 days after expenses are incurred) and the mandated documentation present "impractical requirements for large fires," with the result that even when dealing with private parties, the department prefers to pursue direct payment from the liable party and its insurer. Br. of Resp't at 15. The lien is, as the department argues, an enforcement option.

As further support for its argument, the PUD cites Washington cases holding that public property has never been subject to mechanics' or materialmen's liens under general mechanics' and materialmen's lien statutes. But while the PUD relies on those

16

cases, it ignores their common theme: namely, that when a claimant is unable to file a lien against public property, the legislature has ordinarily provided another remedy.

In *Hall & Olswang v. Aetna Cas. & Sur. Co.*, 161 Wash. 38, 47, 296 P. 162 (1931), the court discussed the statutory requirement that a general contractor post a performance bond on public projects from which laborers, mechanics and materialmen had a right of action, stating, "It seems plain that [the performance bond provisions] were enacted and have remained the law, in recognition of the law that public property has never been subject to mechanics' or materialmen's liens under our general mechanics' and materialmen's lien statutes." In *Maxon v. School Dist. No. 34 of Spokane County*, 5 Wash. 142, 145-46, 31 P. 462 (1892), the court similarly observed that "the general idea" of an 1888 act requiring local governments to obtain a "good and sufficient bond" from their contractors was "to provide for laborers and material men some safe means of obtaining their just dues as against a contractor on a public work where they could in the nature of things have no lien." More recently, in *3A Industries, Inc. v. Turner Constr. Co.*, 71 Wn. App. 407, 411, 869 P.2d 65 (1993), the court observed that Washington statutes require contractors to obtain bonds on public works projects "for the protection of laborers and materialmen because mechanics' liens are unavailable on such projects." As pointed out by McQuillin, "Persons furnishing labor and material used in the construction of a public improvement are generally given a lien on the money due the contractor from the municipality under the contract for that particular improvement."

17

EUGENE MCQUILLIN, 13 MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 37:192 at 598 (3d ed. 2008). In Washington, chapter 60.28 RCW provides for such liens.

The lien cases, then, are in accord with our conclusion that the Act's fire suppression cost recovery provision provides dual remedies: a suit for damages or a lien. And these dual remedies parallel dual remedies available under a different provision of the Act: RCW 76.04.610(1), which authorizes the department to impose monetary assessments on owners of forest land to whom the department provides protection. Amounts owed by private owners are reported to the county assessor in which the property is located, become a lien in the same manner as general state and county taxes on the same property, and can be collected through foreclosure, just as taxes can. RCW 76.04.610(2)(b)(4) and (5). Assessment amounts owed by public entities, by contrast, "are not a lien against the . . . land but shall constitute a debt by the nonfederal public body." RCW 76.04.610(2)(b)(7). Just as under RCW 76.04.495(1) and (2), then, provision is made by which liabilities of both private and public entities may be collected by the department.

## Conclusion

Because the PUD is a "person, firm or corporation" within the plain meaning of RCW 76.04.495, we need not reach its arguments based on canons of statutory

construction. The superior court properly denied the motion to dismiss. We affirm and

remand for further proceedings.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, .J.

_____
Lawrence-Berrey, J.