# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TRACY NEIGHBORS and BARBARA NEIGHBORS; CHRISTOPHER LARGE and TARA LARGE; and JORDAN MILLER and MISTILYN MILLER, | No. 79492-2-I |
| | DIVISION ONE |
| Appellants, | UNPUBLISHED OPINION |
| ARUL MENEZES and LUCRETIA VANDERWENDE; LAKE SAMMAMISH 4257 LLC; HERBERT MOORE and ELYNNE MOORE; TED DAVIS and ELAINE DAVIS; REID BROWN and TERESA BROWN; SHAWN HUARTE and TRINA HUARTE; ANNETTE MCNABB; EUGENE MOREL and ELIZABETH MOREL; VOLKER ELSTE and GAIL UREEL; JOHN R. WARD and JOANNA WARD, as co-trustees of the WARD HALES LIVING TRUST; YORK HUTTON; L. LARS KNUDSEN and LISA SHDO; DOUG SCHUMACHER; IVAN STEWART and IRIS STEWART; and GORDON CONGER, | |
| Plaintiffs, | |
| v. | |
| KING COUNTY, a municipal corporation and political subdivision of the state of Washington, | |
| Respondent, | |
| and | |

Citations and pin cites are based on the Westlaw online version of the cited material.

RAYMOND RYAN and HEIDI RYAN,
husband and wife,

                    Intervenors.

APPELWICK, J. — The trial court granted summary judgment quieting title in King County (County) on its claim to ownership of a 100 foot corridor crossing the appellant's properties and declined to block its exercise of the power of ejectment. We affirm.

FACTS

King County purchased a railway corridor along Lake Sammamish and converted it to a public trail pursuant to the Rails to Trails Act, 16 U.S.C. § 1247(d). The Burlington Northern and Santa Fe Railway Company—Abandonment Exception—In King County, WA, 1998 WL 638432 (U.S. Surface Transp. Bd. Sept. 16, 1998) (STB Order).

At issue is the width and ownership interests of the portions of the corridor that cross the appellants' properties.

A. The Corridor

In the late 1800s, Seattle Lake Shore and Eastern Railway Company (SLS&E) assembled land on the eastern shore of Lake Sammamish for the purpose of constructing a railroad. The land was assembled by a mix of easements, adverse possession, land grants, and deed transfers from private parties. It finished constructing the railroad in 1888. After a series of name and ownership changes, the railroad came to be owned by the Burlington Northern Santa Fe Railroad Company (BNSF). The portions of the railway at issue here were apparently acquired by the railroad by easement and adverse possession.

2

The parties do not dispute that the railroad did not possess a deed for the portions of the railroad at issue in this appeal.

At trial, the County introduced several historical maps of the railway, the authenticity and contents of which are unchallenged. These maps include a 1917 "Val" map,[1] a King County property ownership map from 1905-1940, a 1930 King County Engineers Survey, and 2014 and 2013 King County Assessor's maps. All of these maps show the railroad corridor being roughly 100 feet wide in all areas relevant to this appeal.

In 1997, BNSF conveyed its interest in the railroad to The Land Conservancy of Seattle and King County (TLC) by quitclaim deed. The deed described the railway as 100 feet wide. In the transfer agreement, TLC agreed to accept the land "as is, where is" and "with all faults." The transfer agreement disclosed that numerous adjacent property owners sought quiet title to portions of the railroad and that other such actions may be filed.

On September 16, 1998, the Surface Transportation Board issued the STB Order, an order "railbanking" the railroad. This order allowed BNSF to reach an agreement with the County and TLC allowing them to assume financial responsibility for the railway and develop it into a recreational trail, subject to future reactivation as a railroad. Id.

On September 18, 1998, TLC transferred the property to King County by quitclaim deed. That same year, the County completed an official survey of record

---

[1] "Val" maps are official records for the Interstate Commerce Commission created pursuant to the Valuation Act of 1913, Pub. L. No. 62-400, § 19a, 37 Stat. 701, which served to measure railroad property subject to regulation.

for the entire trail. The parties do not dispute that the survey shows the trail is 100 feet wide in the areas adjacent to the appellants' properties. The County then constructed a soft surface, and later paved, public trail through the property.

B. Appellants' Properties

This action included the owners of 18 properties at the time of the orders being appealed in this case.[2] Only three property owners appealed from the summary judgment in favor of King County: The Neighbors, the Larges, and the Millers.[3] The properties of all three appellants are bisected by the railway corridor into two portions: a small lakefront portion and a larger inland portion.

The Neighbors own the property at 3015 East Lake Sammamish Parkway Southeast. They acquired the property by statutory warranty deed in 2011. The deed expressly excludes the BNSF railway corridor but does not specify how large the corridor is. The Neighbors' residence is in the inland portion of their property. The home was constructed by their predecessors in interest in 2010. Their predecessors in interest also constructed a cabana, rock retaining walls, and concrete access path within the railway corridor. The Neighbors claim the concrete path and retaining walls were constructed in 2008. They claim the cabana has been in place since the 1980s, but was completely rebuilt in 2008. Their predecessors in interest obtained permits for this and other landscaping work from the City of Sammamish. In 2006, the Neighbors' predecessors in interest obtained a permit for the cabana and other features from King County. In that permit, they

---

[2] For clarity, we refer to the larger group included below as "the plaintiffs."
[3] For clarity, we refer to these parties collectively as "the appellants."

acknowledged that the cabana was within King County's property and acknowledged that its presence does not create any rights or interest in the property.

The Larges own the property at 2811 East Lake Sammamish Parkway Southeast. They acquired the property by statutory warranty deed from York Hutton in 2015. The deed expressly excludes the railway corridor but does not specify its width. Their home, originally constructed in 1942 and most recently remodeled in 2000, is in the inland portion of their property, partially intruding into the railway corridor. King County issued building permits for this most recent construction, which encroaches on the corridor.

The Millers own the properties at both 2831 and 2845 East Lake Sammamish Way Southeast. They acquired the properties by statutory warranty deed in 2002. The deed expressly excludes the railway corridor but does not specify its width. There are two homes on the lots, one on the lower lakefront portion of the property and a larger primary residence on the inland portion. The smaller home was originally built in 1929 and remodeled between 2002 and 2004. The Millers built the larger home as their primary residence in 2008. The smaller home lies almost entirely within the railway corridor. Portions of the larger home also lie within the corridor, including a back deck and sports court. The Millers' title insurance provider, Fidelity National Title, notified them that the small home encroached on the railroad right of way by roughly 25 feet. The Millers' predecessor in interest obtained a lease from the railroad for the encroachment, as well as a 25 feet encroachment on the other side of the tracks, from 1975 to

1984.  The documents associated with that lease show the railway corridor being 100 feet wide.

C. Procedural History

The plaintiffs filed this case in King County Superior Court on June 18, 2019. They sought quiet title primarily on the basis of two theories.  First, they argued that prior to transferring its interest, the railroad possessed an easement for only the width of the railroad tracks, ties, and ballast over their properties, which is much narrower than the 100 foot right of way described in the quitclaim deed.  Second, they argued that even if the County had acquired a wider easement, the plaintiffs had acquired that interest through adverse possession.

At that time, the Neighbors were already involved in a federal suit over the width and ownership interest of the railway corridor in Hornish v. King County, 182 F. Supp. 3d 1124 (2016), aff'd, 899 F.3d 680, 686 (9th Cir. 2018).  Neither the Millers nor the Larges were a party to that suit.

In Hornish, the Neighbors and others sought a declaration of their property rights within the railway corridor.  Hornish, 899 F.3d at 686.  They made an argument nearly identical to one of their arguments here: that the railroad possessed only a 12 foot wide easement that encompassed only the railroad tracks. Id. at 699.  Therefore, they asserted that only this 12 foot wide interest was conveyed by the quitclaim deed to TLC and subsequently to King County.  Id.  The district court granted summary judgment for the County, finding inter alia that the County had acquired a 100 foot easement through the Neighbors' property through the quitclaim deed it received from BNSF.  Hornish, 182 F. Supp. 3d at 1134.  It

6

further found that even if the County had not obtained the easement through this transfer, it acquired the same through adverse possession under RCW 7.28.070. Id. The Ninth Circuit Court of Appeals affirmed. Hornish, 899 F.3d at 686.

Relying in part on the ruling in Hornish, the County moved for judgment on the pleadings in this case. The trial court granted that motion in part. It held that the Neighbors were barred from raising any claims they raised or could have raised in Hornish. It also dismissed all of the plaintiffs' adverse possession claims because the County is immune from such claims for its public lands under RCW 7.28.890.

Thereafter, the plaintiffs sought leave to amend their complaint. They indicated that they wished to add the affirmative defense of equitable estoppel and that they wished "[a]s a matter of housekeeping" to "delet[e] references to Plaintiff's former adverse possession claims." The court granted the motion. The plaintiffs then filed a second amended complaint[4] without the adverse possession claim.

Both parties moved for summary judgment. The County relied on declarations that included the maps and surveys described above. The plaintiffs relied on their own declarations and the declaration of David Matthews. Matthews is a surveyor with over 25 years of experience. He determined that that the railway corridor was only 50 feet wide by reviewing various historical documents.

The trial court granted summary judgment for the County. Specifically, it found that the corridor was 100 feet wide and the County owned it in fee simple,

---

[4] The plaintiffs previously amended their complaint for the apparent purpose of adding additional plaintiffs, including two of the appellants, the Larges and the Millers.

that the plaintiffs did not have standing to challenge the County's title, and that the County had a right to eject the plaintiffs' encroachments in the corridor.

The Neighbors, Larges, and Millers appeal.

DISCUSSION

The County urges us to dismiss this suit because the Neighbors' claims are barred by res judicata and the remaining appellants do not have standing.

The trial court held that any claims the Neighbors raised or could have raised in Hornish were barred by res judicata. We agree. Res judicata prohibits the relitigation of claims and issues that were litigated, or could have been litigated, in a prior action. Peterson v. Potter, 103 Wn. App. 62, 67, 11 P.3d 833 (2000). The doctrine requires identity between the prior judgment and subsequent action of (1) persons and parties, (2) cause of action, (3) subject matter, and (4) the quality of persons for or against whom the claim is made. Id. The four identities here are the same. The Neighbors were a party to Hornish, which was also an action for quiet title for the same railway corridor against the same defendant, King County. Hornish, 899 F.3d at 686 (the Neighbors as plaintiffs-appellants, King County as defendant-appellee, nature of complaint, same railroad corridor). Their claims are therefore barred. We proceed to analyze only the remaining appellants' claims.[5]

The trial court found that the appellants did not have standing to challenge the County's title to the railway corridor. RCW 7.28.010 provides that "[a]ny person

---

[5] For clarity, we continue to refer to "the appellants" throughout the opinion. For the remainder of our analysis, that group refers to only the Millers and the Larges.

having a valid, subsisting interest in real property, and a right of possession thereof" may seek quiet title. The appellants argue two grounds as a basis for the interest in the corridor required to confer standing: (1) their deeds and (2) adverse possession. We consider each in turn.

I.  Width of the Corridor

Though the appellants' deeds expressly except the corridor, they do not specify its width. Each appellant's property is bisected by the corridor. Thus, any land that is not included in the railway corridor would be included in the appellants' deeds. This is the first basis for ownership interest that the appellants claim.

The trial court determined the width of the corridor at summary judgment. Appellants argue that the trial court made a series of errors in this regard. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). All reasonable inferences from the evidence must be drawn against the moving party. Id. We review a summary judgment order de novo. Id.

At summary judgment, the County introduced various historical maps and county surveys that showed the corridor was 100 feet wide and had been since at least 1917. The trial court placed special emphasis on a survey conducted by the County in 1998. It concluded that, because the survey was produced by a government agency, its validity could be overcome only by clear and convincing evidence. The appellants argue this was an error for two reasons. First, they argue that the County should not be able to use its own survey in a dispute with a

9

private party. Second, they argue that the presumption can be overcome by any showing of evidence to the contrary, rather than the higher "clear and convincing" evidence standard.

RCW 36.32.370 provides,

> Except as otherwise provided in this title, the board of county commissioners, through a surveyor employed by it shall execute all surveys of land that may be required by the county. The certificate of the surveyor so employed of any survey made of lands within the county shall be presumptive evidence of the facts contained therein.

"A government survey is authoritative and is not open to collateral attack between private parties." Rohrbach v. Sanstrom, 172 Wash. 405, 407, 20 P.2d 28 (1933). The appellants argue this presumption should not apply here because the dispute involves the government and is therefore not between private parties. The plain language of RCW 36.32.370 does not support such a limitation. It indicates that such surveys "shall be presumptive evidence of the facts therein" with no mention of the parties who might contest those facts. Id. They cite no case law that prohibits the government from availing itself of the presumption. The appellants seem to imply that it would be unfair to allow the County to use its own survey to prove the boundaries of its property. But, government officials are presumed to have performed their duties legally and professionally. See, e.g., Somer v. Woodhouse, 28 Wn. App. 262, 267, 623 P.2d 1164 (1981); Smith v. Hollenbeck, 48 Wn.2d 461, 465, 294 P.2d 921 (1956). No evidence suggests the 1998 survey was conducted in such a way to disenfranchise the appellants or others. In fact, the findings in that survey are in line with all similar historical surveys, including a

Val map from 1917, a county survey from 1930, and a property ownership map from 1940.

The appellants also take issue with the "clear and convincing" evidence standard the trial court applied to this statutory presumption. They argue that the statutory presumption can be overcome by any showing of evidence to the contrary. But, we need not reach this issue because, even by their own standard, the appellants have not presented sufficient evidence to overcome the statutory presumption of the facts. In response to the various historical maps and government surveys produced by the County, the appellants produced declarations from the plaintiffs below and a single surveyor named David Matthews. Matthews is a surveyor with over 25 years of experience. He determined that that the railway corridor was only 50 feet wide by reviewing various historical documents. He did not conduct his own survey of the land. He did not review any of the surveys predating the County's ownership or the 1917 Val map. While he apparently reviewed relevant portions of the 1998 survey,[6] he did not indicate whether he believes the survey is wrong or if he simply drew a different conclusion from reading it and other historical documents. At best, Matthews

---

[6] The trial court seems to have found that Matthews did not review the 1998 survey: "[Matthews] concluded that [the corridor] width was 50 feet. But his opinions don't review nor do they reconcile . . . the 1998 survey." To the extent the trial court found that Matthews had not reviewed the 1998 survey, this was an error. Matthews states in his declaration that he reviewed "King County Department of Transportation 'East Lake Sammamish Trial Right of Way Exhibit,'" and attaches that document as an exhibit to his declaration. A comparison of that document with excerpts from the 1998 survey reveals that it appears to be excerpts from the same document. Matthews goes on to cite the 1998 survey for some of the factual assertions in his declaration.

provides a contrary opinion regarding the width, but does not specifically attack the 1998 survey. And, he does not reconcile his opinion at all with the 1917 Val map or the 1930 survey. His declaration is insufficient to raise a genuine issue of fact as to the presumptive validity of the county surveys.

We affirm the trial court's grant of summary judgment on the width of the corridor conveyed to the County.

## II. Adverse Possession

The appellants next claim they acquired an ownership interest in portions of the corridor by adverse possession. They claim the trial court erred in dismissing their claims for adverse possession of portions of the corridor both in the judgment on the pleadings and at summary judgment. They argue that their adverse possession claims were based on occurrences predating the County's ownership of the corridor.

### A. Procedural Issues

In their original complaint and first amended complaint, the appellants made clear they were claiming adverse possession against the County based on their use of the land after the County gained possession of the corridor: "[I]f the Defendant were able to prove BNSF acquired prescriptive easement rights to widths greater than the railroad tracks, ties and ballast, Defendant later lost those rights when Plaintiffs improved and occupied major portions of the corridor for the time period necessary to extinguish Defendant's interest under adverse possession." BNSF was not a defendant in this case, only King County. The appellants' argument that the complaint was based on occurrences predating the

County's ownership of the corridor contradicts the plain language of the complaint indicating it was the County, not BNSF, who had lost rights to the corridor. The County is immune from adverse possession claims for its public lands under RCW 7.28.090. Thus, when the County moved for judgment on the pleadings, the trial court properly dismissed the adverse possession claims on that ground. We affirm that decision.

After the trial court dismissed their adverse possession claims, the plaintiffs sought and were granted leave to amend their complaint. The subsequent complaint contained no reference to adverse possession. When an amended complaint omits a prior claim in the original compliant, it abandons that claim. Fluke Capital & Mgmt. Servs. Co. v. Richmond, 106 Wn.2d 614, 619 n.4, 724 P.2d 356 (1986).

Nevertheless, the plaintiffs sought to argue at summary judgment that their predecessors in interest had adversely possessed portions of the corridor from the railroad prior to the County gaining ownership. The trial court properly ruled that such a claim was not properly before the court. We affirm that decision.

B. Preemption

The County argues that even if the appellants' adverse possession claims were properly before the court, such claims would be preempted by the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 10501(b). We agree.

The ICCTA provides,

The jurisdiction of the [Surface Transportation Board] over—

13

> . . . .
>
> . . . the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities . . .
>
> is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

Id. The preclusive effect of this legislation is among the most pervasive and comprehensive of regulatory schemes. Chicago & Nw. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 318, 101 S. Ct. 1124, 67 L. Ed. 2d 258 (1981). The Surface Transportation Board and federal courts have explicitly ruled that the ICCTA preempts claims under Washington adverse possession statutes against railroads. Jie Ao & Xin Zhou—Petition for Declaratory Order, 2012 WL 2047726 at *1 (U.S. Surface Transp. Bd. June 4, 2012); B & S Holdings, LLC v. BNSF Ry. Co., 889 F. Supp. 2d 1254, 1258 (E.D. Wash. 2012).

The appellants argue that the question of ICCTA preemption is not properly before this court. They argue this is so because the trial court reserved federal preemption questions in its ruling on the County's motion for judgment on the pleadings. After that, the County did not seek a ruling on the matter at summary judgment.

But, it is the appellants who assert that adverse possession provides them an ownership interest sufficient to provide standing in this case. Because the ICCTA preempts operation of Washington adverse possession statutes against

railroads, their claim must fail. The appellants are unable to establish an ownership interest on this ground.

### C. Merits

Even if the appellants' adverse possession claims were not abandoned and preempted, there is little dispute of material fact as to the merits of those claims. Adverse possession requires possession that is (1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile. ITT Rayonier, Inc. v. Bell, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). Each of these elements must exist for the statutorily prescribed period of 10 years. Id. RCW 7.28.090 forecloses a claim of adverse possession against a government entity unless the possession vested against a previous private owner. See Gorman v. City of Woodinville, 160 Wn. App. 759, 764-65, 249 P.3d 1040 (2011), aff'd, 175 Wn.2d 68, 283 P.3d 1082 (2012). So, appellants would need to show that they fulfilled all the statutory requirements above for a period of 10 years before the County gained ownership.

To that end, the appellants point to "obvious uses and improvements" that "exist on every property involved in the underlying case." They do not specify which improvements are on their properties, and their citations to the record reference only properties owned by plaintiffs who are not parties on appeal.

The improvements on the Larges' property that intrude on the corridor apparently were constructed after the County gained ownership. So, these improvements and their residential uses cannot form the basis for an adverse possession claim that predates the County's ownership. The appellants point to no other "obvious uses and improvements" on the Larges' property.

The original home on the Millers' property that intrudes on the corridor was apparently built in 1929. However, the Millers' title insurance provider, Fidelity National Title, notified them that the small home encroached on the railroad right of way by roughly 25 feet. And, the Millers' predecessor in interest obtained a lease from the railroad for a portion of the original home that encroached on the railroad. Documents associated with the lease show the corridor stretches 50 feet outwards on each side of the tracks, for a total width of 100 feet. The lease covered an area 26 feet into the corridor on the lake side and 25 feet on the inland side. The lakeside portion covered by the lease would encompass the original beachfront home. The inland portion would cover the portions of the newer home that encroaches on the corridor. It would also encompass the sports court. However, both of these improvements were constructed after the term of the lease expired. The lease ran from 1975 to 1984. The County did not gain ownership until 1998. So, there was a 14 year period prior to the County's ownership where the original beachfront home encroached on the corridor. It is possible that the Millers' would be able to meet the requirements of adverse possession during that time. But, as outlined below, even if that had been the case, the County later adversely possessed that land back. Infra, Part III.

III.   King County's Adverse Possession Claim

At summary judgment, the County argued that, even if it did not acquire a 100 foot corridor through the 1998 quitclaim deed, it subsequently acquired the same through adverse possession under RCW 7.28.070. The trial court agreed. The appellants' assigned error that the trial court did not reach the issue is

16

therefore incorrect. In the alternative, the appellants argue that the trial court erred in finding the County could meet the requirements of RCW 7.28.070.

RCW 7.28.070 provides,

Every person in actual, open and notorious possession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all the taxes legally assessed on such lands or tenements, to the extent and according to the purport of his or her paper title.

The appellants argue first that RCW 7.28.070 does not apply to governments. They argue that allowing the government to adversely possess property under this statute is precluded by the Fifth Amendment to the United States Constitution because it would allow the government to take property without just compensation.[7] But, our Supreme Court has already ruled that the government may adversely possess property without running afoul of the United States Constitution. See Petersen v. City of Seattle, 94 Wn.2d 479, 483-84, 618 P.2d 67 (1980).

The appellants claim next that the County did not have good faith color of title. They claim this is so because the deed by which the County obtained title was only a quitclaim deed, and it disclosed multiple disputes with adjacent property owners concerning the width of the corridor. Color of title exists where a quitclaim deed sufficiently describes the property in question and purports to convey it to the

---

[7] The County is also a "person" for purposes of Washington statutes. Use of the term "person" in Washington statutes is properly construed to include "the United States, this state, or any state territory, or any public or private corporation or limited liability company, as well as an individual." RCW 1.16.080(1); see also Dep't of Nat. Res. v. Pub. Util. Dist. No.1 of Klickitat County, 187 Wn. App. 490, 493, 349 P.3d 916 (2015) ("[A] municipal corporation is a 'person.'").

grantee. Scramlin v. Warner, 69 Wn.2d 6, 10, 416 P.2d 699 (1966). The County's deed describes the corridor as 100 feet wide adjacent to the appellants' property and purports to convey it to the County. So, the appellants' only argument is that because the adjacent property owners disputed this, the County did not have title in good faith.[8] Appellants cite Erikson v. Wick, 22 Wn. App. 433, 440-41, 591 P.2d 804 (1979) to support this proposition.

In Erikson, the Wicks owned a plat of land on the shore of Crescent Lake. Id. at 434. The meander line of the lake formed a part of their eastern property line. Id. at 434-35. Both parcels were transferred to their owners by the government. Id. at 436. A discrepancy existed between the meander line as depicted on the government plat and field notes. Id. at 435. The Wicks also discovered maps at the county assessor's office suggesting they did not own all the property they claimed. Id. at 440. Their attorney at the time informed them that a quiet title action might be necessary. Id. They then segregated the disputed portion from their property by conveying it to their son with a metes and bounds description in the deed. Id. The Wicks sought quiet title to the area, claiming to have good faith color of title. Id. 439. The court found that the Wicks knew or should have known of the problem, and that this knowledge precluded a claim under RCW 7.28.070. Id. at 440-41.

---

[8] Appellants also argue that the description of the corridor in the County's deed and Appellants' deeds do not match. While the Appellants' deeds specifically exclude the corridor, they do not describe it. There is therefore no discrepancy in the descriptions.

This case is easily distinguishable from Erickson because no similar discrepancies existed in the official records when the County acquired the property. Knowledge that adjacent property owners disagree about the width of the easement is not enough to defeat King County's good faith belief in its color of title when it held a deed with a description supported by all relevant official records. See Williams v. Striker, 29 Wn. App. 132, 136-37, 627 P.2d 590 (1981) (holding that constructive knowledge of adjacent property owners claims to property does not in and of itself preclude good faith color of title).

Next, the appellants argue that King County's use of the land was not "actual, open and notorious." In determining whether use was open and notorious, the use need be only "of the character that a true owner would assert in view of its nature and location." Chaplin v. Sanders, 100 Wn.2d 853, 863, 676 P.2d 431 (1984). King County recorded its deed and thereafter presented itself as the owner of a 100 foot wide corridor. It removed the railroad tracks and constructed a public trail on the property. It compelled two of the appellants' predecessors in interest to apply for special use permits or otherwise acknowledge the County's interest in order to utilize the land. The County also required other adjacent property owners to apply for special use permits. These uses are consistent with a County operating a public park and are open and notorious given the nature of the property.

Last, the appellants claim that they, rather than the County, paid taxes on the property. They claim this is so because the County is immune from property taxes and their own tax bills were increased as a result of their improvements in

the corridor. The County does not dispute that it is exempted from paying property taxes. It counters that it paid various fees, including surface water management, noxious weed, and conservation fees. The appellants do not dispute that the tax parcels the County is responsible for include the disputed land. They argue only that the payment of fees alone is insufficient. The statute does not say "property taxes," it says "all taxes legally assessed." The parties do not dispute that the County paid all fees that were legally assessed on the parcel. Nor do they dispute that the County did not pay any legally assessed property taxes on the parcel, because no such taxes could be assessed. We conclude that the County paid "all taxes legally assessed" on the land.

The trial court correctly concluded King County met the statutory requirements of RCW 7.28.070. Even if the appellants owned of any portion of the corridor when it was transferred to King County, the County subsequently gained ownership of these areas by adverse possession.

IV.  Equitable Remedies

The appellants nevertheless argue that equitable considerations should preclude the County from exercising its right to ejectment. We review decisions in equity for abuse of discretion. See, e.g., Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (judicial estoppel); State, In re Determination of Rights to the Use of Surface Waters of the Yakima River Drainage Basin, 112 Wn. App. 729, 748, 51 P.3d 800 (2002) (water rights); Rabon v. City of Seattle, 135 Wn.2d 278, 284, 957 P.2d 621(1998) (preliminary injunction); In re Foreclosure of Liens for Delinquent Real Prop. Taxes for the Years 1985 through 1988, 123

Wn.2d 197, 204, 867 P.2d 605 (1994) (restitution). A trial court abuses its discretion when its decision is based on untenable grounds, or is manifestly unreasonable or arbitrary. Rabon, 135 Wn.2d at 284.

The trial court reasoned that disallowing the County's right of ejectment would prevent it from performing its legal duty to preserve the corridor for future railroad reactivation under the Trails Act, 16 U.S.C. § 1247(d). It also observed that allowing the County to acquiesce to disposal of public lands in this fashion would run afoul of King County procedures for disposing of surplus land, which require approval of the King County Council, notice, and a public bidding process. RCW 36.34.005; King County Code (KCC) 4.56.070; KCC 4.56.100.

This reasoning is not manifestly unreasonable. Further, it comports with the important public policy interests supporting the County's immunity from adverse possession claims. Public lands are held for the public's benefit, and the public should not have to "suffe[r] for the negligence of its representatives." Gorman, 160 Wn. App. at 764.

We find the trial court did not abuse its discretion in finding equitable principles should not be applied to preclude King County's right of ejectment.

V.    Attorney Fees

The County requests attorney fees on appeal pursuant to RAP 18.1.[9] Both parties seek fees under RCW 7.28.083(3) which allows a prevailing party in an

_____

[9] King County also sought fees against the Neighbors based on RAP 18.9. While we agree that the Neighbors' appeal is frivolous because it is barred by res judicata, the same cannot be said for the Millers and Larges. Because we find that King County is entitled to fees against Neighbors, Millers and Larges under RCW 7.28.083(3), we decline to also award fees under RAP 18.9.

action asserting title by adverse possession to recover attorney fees. The County has prevailed. We award the County attorney fees and costs pursuant to RCW 7.28.083.

We affirm.

_Appelwick, J._

WE CONCUR:

_Chun, J._      _Andrus, A.C.J._